```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PREBLE-RISH HAITI, S.A.

                        Plaintiff,              21-cv-4960 (PKC)

            -against-                           OPINION AND ORDER


REPUBLIC OF HAITI and BUREAU DE
MONÉTISATION DE PROGRAMMES D'AIDE
AU DÉVELOPPMENT,

                        Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

This is a motion by Banque de la Républic d'Haïti ("BRH"), the central bank of Haiti, to intervene in this action and vacate a maritime attachment in an amount in excess of $29 million, as well as for other ancillary relief. The Court concludes that the attached funds are those of the central bank held for its account and are immune from attachment under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1161(b)(1). The Court will grant BRH's motions.

BACKGROUND

Plaintiff Preble-Rish Haiti, S.A. ("Preble-Rish") brought this action seeking a Rule B maritime attachment in aid of an arbitration against defendants Republic of Haiti and Bureau De Monétisation De Programmes D'Aide Au Développment, a Haitian governmental agency (collectively "BMPAD"). The Court granted an order directing the clerk to issue process of maritime attachment and garnishment on a Citibank account in BMPAD's name. (Doc 12.) On June 21, 2021, Preble-Rish asked the Court to enter supplemental order of attachment, after

discovering that the name of the account to be attached was that of BRH and not BMPAD. (Docs 14–17.)  The Court entered the supplemental order on June 22, 2021. (Doc 18.)

According to the Amended Complaint, Preble-Rish and BMPAD entered into three contracts whereby Preble-Rish agreed to source, ship, and deliver fuel to BMPAD for a fee. (Am. Compl. at ¶¶ 17–19.)  Specifically, Preble-Rish agreed to make six monthly shipments of certain fuels, based on the total monthly quantity requested by BMPAD.  (Id. at ¶ 23.)

The first four fuel orders proceeded uneventfully, but BMPAD allegedly fell behind on payments on the fifth order.  (Id. at ¶ 55.)  Though payment had yet to be received, Preble-Rish continued with the sourcing and shipping process, sending reminders to BMPAD as the invoices became due and ships were loaded with BMPAD's fuel.  (Id. at ¶¶ 56–61.)  BMPAD acknowledged receipt of shipping documents for the Haiti-bound ships carrying the unpaid fuel and took possession of the fuel as the ships arrived in Haiti.  However, payment was never sent to Preble-Rish.  Eventually, Preble-Rish halted all fuel shipments to BMPAD and alleges that BMPAD now owes approximately $27.2 million dollars in damages from the unpaid invoices for fuel delivered and lost profits.  (Id. at ¶ 94.)

Pursuant to the arbitration clauses in the three contracts, Preble-Rish served a notice demanding arbitration of its claims against BMPAD.  (Id. at ¶ 8.)  In response, BMPAD filed a petition in the Supreme Court of New York to stay the arbitration pursuant to N.Y. C.P.L.R. § 7503(b) (Case Index No. 657237/2020).  In the absence of injunctive relief from state court, the arbitration proceeded and Preble-Rish filed the present action for a maritime attachment to secure a potential arbitral award.

On August 6, 2021, the arbitration panel issued a Partial Final Award granting Preble-Rish's petition for pre-award security and directing BMPAD to deposit $23,043,429.79

into an escrow account.  Preble-Rish has filed a second action in this Court to confirm this Partial Final Award.  Preble Rish Haiti, S.A. v. Republic of Haiti et al., 21-cv-6704 (PKC).  BRH is not a party to the present action nor the action that seeks to confirm the Partial Final Award.

DISCUSSION

      A.  BRH's Motion to Intervene
          Will Be Granted.

Non-party BRH, who claims that its funds have been wrongfully attached, seeks to intervene as of right in this action.  Rule 24(a)(2), Fed. R. Civ. P., provides, in part that "[o]n timely motion, the court must permit anyone to intervene who . . .  claims an interest relating to the property . . . that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  See Master Card Int'l, Inc. v Visa Int'l Serv. Ass'n Inc., 471 F.3d 277, 389 (2d Cir. 2006).   Preble-Rish does not dispute that BRH's motion is timely, BRH claims an interest relating to the property, and the order of attachment may impair BRH's interest.  Instead, it argues that intervention should be denied because BMPAD adequately represents BRH's interests.

While BMPAD raises arguments that BRH also raises, there is no dispute that BRH is the central bank of Haiti and, as compared to BMPAD, has a better understanding of the typical activities of central banks which, as will be seen, is a relevant consideration under Second Circuit case law.  "The [adequately represents] requirement . . . is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."  Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972) (quoting 3B J. Moore, Federal Practice 24.09–1 (4) (1969)).  See also New York

<u>Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.</u>, 516 F.2d 350, 352 (2d Cir. 1975) (intervenor would make "a more vigorous presentation").

The Court concludes that representation of the central bank's interests by BMPAD is likely inadequate in presenting the nature of BRH's central bank activities. Accordingly, the Court will grant BRH's motion to intervene as of right.

    B.  BRH's Motion to Vacate
        <u>Is Granted.</u>

BRH has moved to vacate the attachment for several reasons, principally asserting that it violates section 1611(b)(1) of the FSIA. Section 1611(b) reads in relevant part as follows:

> Notwithstanding the provisions of section 1610 of this chapter,[1] the property of a foreign state shall be immune from attachment and from execution, if—
> (1) the property is that of a foreign central bank . . . held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment. . . .

Preble-Rish makes no claim that BRH or the Republic of Haiti have "explicitly waived" its immunity from attachment. Rather, it argues that BRH does not hold the funds in question "for its own account", and so the immunity for central bank property does not apply. The text of the statute together with the teachings of the Second Circuit in <u>NML Capital, Inc., v. Banco Central de la Republica Argentina</u>, 652 F.3d 172 (2d Cir. 2011) are largely dispositive of the motion.

First, there is no serious dispute that BRH is the central bank of Haiti and that the funds are in an account in the name of BRH and not any other entity. On June 17, Preble-Rish wrote to this Court advising that "[f]ollowing discussions with Citibank's counsel and further

---

[1] Preble-Rish asserts that BRH uses the funds for commercial activity, excepting them from immunity under 28 U.S.C. § 1610(a)(2) ("The property in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment . . . if . . . the property is or was used for the commercial activity upon which the claim is based. . . ."). The immunity afforded under section 1610(a)(2) is distinct from the immunity provided in section 1611(b)(1) relating specifically to funds of central banks. The Court need not reach beyond section 1611(b)(1) to decide BRH's motion.

review of internal documents maintained by Plaintiff, we came to understand that the name on the bank account we believed belongs to Defendant, account [redacted], is 'Banque de la Republique d'Haiti.' " (Doc 17.) This prompted the Court to issue, at Preble-Rish's request, a supplemental order for the process of attachment (Doc 18) based upon the allegation that the attachment was actually that of BMPAD's despite bearing the name of BRH. (Am Compl. ¶ 101.) The funds were then attached.

NML Capital, Inc. holds that "[w]here funds are held in an account in the name of a central bank . . . the funds are presumed to be immune from attachment under § 1611(b)(1)." 652 F.3d at 194. Preble-Rish does not dispute that the funds are in an account in the name of BRH and that BRH is the central bank of Haiti. "A plaintiff, however, can rebut that presumption by demonstrating with specificity that the funds are not being used for central banking functions as such functions are normally understood, irrespective of their 'commercial' nature." Id. If the property is used in a commercial manner, *and* in such a way that is "not generally regarded as a central banking activity", then the funds are attachable. Id. (citation and internal quotation marks omitted).

Preble-Rish argues that it has overcome the presumption because the funds in the BRH account at Citibank are not used for central banking activities. It asserts that BRH acts as an intermediary and its account is used to facilitate payments from BMPAD to its contracted suppliers. In support of this contention, Preble-Rish has attached several letters of correspondence that appear to be between the Haitian Ministry of Economy and Finance and the Governor of BRH. (Doc 33 – Ex. AAA, BBB). In those letters, the Governor of BRH is directed to pay Preble-Rish per the terms of the contract from the Citibank account. To cover those funds, the Governor debits various other accounts that appear to be in BMPAD's name (i.e.

an account called the "BMPAD (Escrow Account)"). In other words, BRH would remit payment from the BRH Citibank account and debit a Haitian BMPAD account to cover the balance.

BRH does not dispute this description of the payment process. Rather, it asserts that this activity is "quintessential central banking activity." (BRH Mem. at 13.) Indeed, in NML Capital, Inc., the Second Circuit held that "acting as the Republic's financial agent and as depository and agent for the Republic before international monetary, banking and financial entities" was a "traditional activit[y] of central banks." NML Capital, Inc., 652 F.3d at 192 (citation omitted). See also EM Ltd v. Republic of Argentina, 865 F. Supp. 2d 415, 424 (S.D.N.Y. 2012) (Griesa, J) (declining to uphold attachment of central bank funds used to repay government debt); Weston Compagnie de Finance Et D' Investissement, S.A. v. La Republica del Ecuador, 823 F. Supp. 1106, 1113 (S.D.N.Y. 1993) (McKenna, J) (Central bank funds that were payments for a state-owned telephone company's services were immune from attachment).

Preble-Rish proffers little support for its assertion that BRH's role as acting as an intermediary facilitating a payment is anything other than a typical central banking activity. It cites Birch Shipping Corp v. Embassy of the United Republic of Tanzania, 507 F. Supp. 311, 313 (D.D.C. 1980) for the proposition that central bank accounts used for "mixed purposes", i.e. commercial activity and central banking functions are not immune from attachment. But the cited case does not represent the law of this Circuit.[2] NML Capital, Inc, holds that central bank

---

[2] A recent D.D.C. decision calls in to doubt the continued viability of Birch Shipping Corp and highlights its inapplicability here. In Continental Transfer Technique, Ltd. v. Federal Government of Nigeria, 08-2026 (PLF), 2019 WL 3562069, at *18 (D.D.C. Aug. 6, 2019), Judge Friedman noted that "serving as a banker to [the Federal Government] by paying certain commercial debts in the United States . . . is a standard central banking activity." Accordingly, whether the debt payment was commercial in nature did not matter for the purposes of section 1611 immunity. "Birch Shipping denied Section 1610 immunity upon finding mixed non-commercial and commercial uses for the embassy account . . . such commercial use is fatal to a claim for . . . immunity under Section 1610 . . . however, commercial use does not vitiate immunity from attachment for property of a central bank under the enhanced protections of Section 1611." Id. at *19.

funds are only attachable when used solely for a commercial purpose, *and* in a way inconsistent with typical central banking functions. NML Capital, Inc., 652 F.3d at 194. See also Olympic Catering, S.A. v. Ministry of Industry and Trade of Jordan, 134 F. Supp. 2d 528, 534 (S.D.N.Y. 2001) (Wood, J) (pre-NML Capital, Inc.) ("If the funds at issue are used for central bank functions as these are normally understood, then they are immune from attachment, even if used for commercial purposes"); Weston Compagnie de Finance Et D' Investissement, S.A., 823 F. Supp. at 1114 (pre-NML Capital, Inc.) ("This Court cannot agree with plaintiff that the fact that an account of a foreign central bank containing funds used for a central banking function also contains some funds not so used will abrogate, as to the entire account, the immunity specifically conferred by Congress.").

Preble-Rish has failed to rebut the presumption that the Citibank account in the name of BRH is immune from attachment. The Court will grant BRH's motion to vacate the supplemental attachment order. In light of this holding, the Court declines to address the remainder of BRH's arguments on the motion, including its assertion that the underlying action is not a maritime action.

> C.  BRH's Motion to Quash the Subpoena
>     and for a Protective Order
>     Will Be Granted.

BRH also moves to quash a subpoena served on Citibank by Preble-Rish. It also asks the Court to issue a protective order that the interrogatories served on Citibank ought not be answered. Because the attachment order has been vacated, the Court grants BRH's motion. As the Second Circuit has held, "FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation." NML Capital, Inc., 652 F.3d at 194 (quoting Kelly v. Syria Petroleum Dev. B.V., 213 F.3d 841, 849 (5th Cir.

2000)). "In the FSIA context, 'discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.' " <u>EM Ltd. v. Republic of Argentina</u>, 473 F.3d 463, 486 (2d Cir. 2007) (quoting <u>First City, Texas-Houston, N.A. v. Rafidain Bank</u>, 150 F.3d 172, 176 (2d Cir. 1998)).[3] Because BRH's account "was never an attachable asset" and Preble-Rish has failed to "show[] a reasonable basis for assuming jurisdiction" over BRH, the subpoena is quashed and the interrogatories do not need to be answered. <u>Id</u>.

CONCLUSION

For the reasons stated above, BRH's motions to intervene and vacate the supplemental attachment order (Doc 18) are GRANTED in full. BRH's motion to quash the subpoena served on Citibank, and for a protective order directed to the interrogatories served on Citibank is also GRANTED. BMPAD's separate motion to vacate the attachment is denied without prejudice.

The Court also GRANTS BRH's request to seal all filings containing account numbers. BRH shall within 3 business days submit to the Court a proposed Order sealing all documents on the public docket that contain the account number (identifying such documents in the body of the proposed Order). Within seven days of the entry of the sealing Order, Preble-Rish is directed to file redacted versions of the sealed documents on the public docket.

The Clerk is directed to terminate the motions (Docs 23, 35 and 41).

---

[3] Preble-Rish places considerable reliance on <u>Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic</u>, 10-cv-5256 (KMW), 2011 WL 4111504, at *3 (S.D.N.Y. Sept. 13, 2011). There, Judge Wood found that a Magistrate Judge's Order providing for limited discovery was not clearly erroneous. No funds were attached, no interests of a central bank were at stake and one of the purposes of the discovery was to determine whether the transaction amounted to "commercial activity" within the meaning of section 1610 of the FSIA, an argument which the Court does not reach on this motion.

SO ORDERED.

_/s/ P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 3, 2021